Opinion issued October 7, 2010












Opinion issued October 12, 2010

 



In The

Court
of Appeals

For The

First
District of Texas

————————————

NO. 01-07-00591-CR

NO. 01-07-00592-CR

———————————

Steven Avilez, Appellant

V.

The State of Texas, Appellee



 



 

On Appeal from the 262nd District
Court

Harris County, Texas



Trial Court Case Nos. 1119152 &
1119154

 



 

CONCURRING
OPINION

The trial transcript in this case documents a
trial court that 

 




§ 
mocked the defendant:

 

TRIAL
COURT:  Let’s go.  Mr. Avilez, are we clear on this?

 

AVILEZ:     Yes, sir. 
With all due respect, I’m just trying to gather my thoughts.  I apologize.

          

TRIAL
COURT:  I believe you’re trying to answer
questions that have not been asked. 
That’s the reason I sent the jury out with all due respect.

 

§ 
was hostile: 

 

AVILEZ:     May I speak to my Counsel for a minute,
sir?

 

TRIAL
COURT:  No, sir, not unless he comes up
here.

 

§ 
was intimidating:

 

At
the beginning of Avilez’s testimony, his attorney asked him where he grew up,
and he responded, “I lived basically all my life in Pasadena, but I have lived
around different places.  I used to
live—.”  The trial court interrupted him
and instructed him to answer the question. 
His attorney then asked him if he graduated from high school, and Avilez
responded, “With honors, sir.”  The trial
court immediately removed the jury and admonished him. 

 

§ 
was unreasonable toward appellant:

 

Avilez’s
attorney asked him, “What—did you actually work for the National—NASA?  I can’t remember the acronym. National Aeronautic—whatever
it is.  Anyway, or did you work for a subcontractor?”
and he responded, “Actually, the name of the subcontractor is United States Space
Alliance. It’s the major subcontractor.” 
The trial court again removed the jury to admonish Avilez again.

 

§ 
and exhibited a marked antipathy toward Avilez:
 sua
sponte interrupting Avilez’s testimony repeatedly and frequently,
admonishing Avilez and threatening him with contempt after reasonable attempts
by Avilez to answer the questions put to him, removing the jury four times
during Avilez’s testimony, and twice holding him in contempt for providing the
type of answers that are routine in any given jury trial.  

          

Despite the
potential prejudice that may have been caused by the actions and attitude of
the trial court, the record is void of any admonishments to the jurors to not
allow the interruptions and their frequent removal from the court to be
construed against the defendant.

Such
repeated dramatic exercises by the court cannot but have been noted by the
jurors.  Although the record before us is
inadequate to determine whether, and to what extent, the trial court’s behavior
affected the jury’s verdict—and we cannot engage in speculation—the mere
prospect of the court prejudicing the jury weighs ponderously heavy upon the
balance of Lady Justice’s scales.

          Nevertheless, whatever the potential impact of the trial court’s
behavior on the jury, because no challenge to any particular court action or
ruling was preserved, and no complaint was raised on appeal about the kind of
fundamental procedural unfairness that could be held an unconstitutional
violation of due process rights, we have no avenue by which to review this trial
court’s behavior that may have caused appellant to have an unfair trial.




For this
reason, I very reluctantly concur in the judgment in this case.

 

 

                                                                   Jim
Sharp

                                                                   Justice


 

Panel consists of Justices Keyes, Sharp, and
Massengale.

Justice Sharp, concurring in judgment.

Publish.  Tex. R. App. P. 47.2(b).